1

2

3

4

5

6               UNITED STATES DISTRICT COURT

7               NORTHERN DISTRICT OF CALIFORNIA

8

9   LARRY McLAUGHLIN,                    No. C 08-5599 SI (pr)

10              Petitioner,              **ORDER DENYING HABEAS
                                         PETITION**
11       v.

12   BEN CURRY, warden,

13              Respondent.
    _____/
14

15                        **INTRODUCTION**

16       Larry McLaughlin, an inmate at the Correctional Training Facility in Soledad, filed this

17   pro se action seeking a writ of habeas corpus under 28 U.S.C. § 2254.  This matter is now before

18   the court for consideration of the merits of the petition.  For the reasons discussed below, the

19   petition will be denied.

20

21                        **BACKGROUND**

22       McLaughlin was convicted in Riverside County Superior Court of second degree murder

23   and was sentenced in August 1981 to a term of 15 years to life in prison.  His habeas petition

24   does not challenge his conviction but instead challenges a September 27, 2007 decision of the

25   Board of Parole Hearings ("BPH") that found him not suitable for parole.  Unlike the vast

26   majority of habeas petitions challenging parole denials, this case does not question the

27   sufficiency of the evidence to support the decision.  Instead, McLaughlin urges that his right to

28   due process was violated when the BPH "vindictively increased petitioner's punishment in

**United States District Court**
For the Northern District of California

retaliation for his successfull (sic) challenge to their (sic) authority." Petition, p. 6.    The specifics regarding the crime and the circumstances supporting the finding of unsuitability are largely irrelevant to the legal question presented in this action.

McLaughlin sought relief in the California courts. He filed a habeas petition in the Riverside County Superior Court, where it was denied in a short decision for failure "to allege sufficient facts to established (sic) a prima facie case for petitioner's release" and failure to exhaust administrative remedies.   Resp. Exh. 2.   The California Court of Appeal and the California Supreme Court summarily denied his habeas petitions.   Resp. Exhs. 4, 6.

McLaughlin then filed his federal petition for a writ of habeas corpus.   The court found the due process claim of vindictive punishment to be not patently frivolous and ordered a response.   Respondent then filed an answer and McLaughlin filed a traverse.   The matter is now ready for a decision.

## JURISDICTION AND VENUE

This court has subject matter jurisdiction over this habeas action for relief under 28 U.S.C. § 2254.   28 U.S.C. § 1331.   This action is in the proper venue because the challenged action concerns the execution of the sentence of a prisoner housed at a prison in Monterey County, within this judicial district.   28 U.S.C. §§ 84, 2241(d).

## EXHAUSTION

Prisoners in state custody who wish to challenge collaterally in federal habeas proceedings either the fact or length of their confinement are required first to exhaust state judicial remedies, either on direct appeal or through collateral proceedings, by presenting the highest state court available with a fair opportunity to rule on the merits of each and every claim they seek to raise in federal court.   See 28 U.S.C. § 2254(b), (c).   The parties do not dispute that state court remedies were exhausted for the claim asserted in the petition.

2

**STANDARD OF REVIEW**

This court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); see Williams (Terry) v. Taylor, 529 U.S. 362, 409-13 (2000).   Section 2254(d) applies to a habeas petition from a state prisoner challenging the denial of parole.  See Hayward v. Marshall, 603 F.3d 546, 563 (9th Cir. 2010) (en banc); Sass v. California Board of Prison Terms, 461 F.3d 1123, 1126-27 (9th Cir. 2006).

**DISCUSSION**

A.    The Facts

McLaughlin contends that vindictiveness was at play when he was found suitable for parole by one BPH panel and then later was found not suitable for parole by another BPH panel. The event that prompted the vindictiveness was a successful prisoner class action, according to McLaughlin.

A class action habeas petition was filed in Marin County Superior Court challenging the BPH's alleged failure to provide life-term inmates with timely parole hearings.  See In re Rutherford, Marin County Superior Court Case No. SC 135399A ("Rutherford").[1]  On November 29, 2004, that court certified as the petitioner class "all prisoners serving

---

[1]This court does not have ready access to state court files, and relies on litigants to present the relevant documents and information.  Here, the information recited about Rutherford is taken from the only materials that were presented to this court, i.e., a single order from Rutherford and a declaration from McLaughlin reciting the contents of another order.

indeterminate terms of life with the possibility of parole, and who have approached or exceeded the minimum eligible parole dates without receiving the parole hearings within the time required by Penal Code § 3014 (sic) and § 3041.5." Resp. Exh. 5 at Exh. A (Order Granting Motion For Class Certification in <u>Rutherford</u>, p. 1.)  McLaughlin does not indicate that he took any active role in <u>Rutherford</u>.  Rather, like hundreds or thousands of other life inmates, he was in the petitioner class because of his status.

On February 15, 2006, the <u>Rutherford</u> court ordered "respondents" (1) to design and implement a scheduling and tracking system for parole suitability decisions; (2) to not encourage prisoners to waive or postpone their hearings or to stipulate that they were unsuitable for parole; (3) to not increase the length of time until the next hearing for more than a year if the prisoner had been previously denied for only a year except upon a significant change in circumstances; and (4) to direct wardens to provide adequate space for hearings, and make certain procedural changes in connection with hearings.  Resp. Exh. 5 at Exh. B (McLaughlin Decl.).

On April 28, 2006, a parole consideration hearing was held, at which the BPH found McLaughlin suitable for parole.  The BPH then set a total term for him of 244 months.

On September 22, 2006, Governor Schwarzenegger reversed the BPH's decision and found McLaughlin not suitable for parole.

On September 27, 2007, another parole consideration hearing was held.  At this hearing, the BPH found McLaughlin not suitable for parole.  The BPH also ordered a new psychological evaluation for the next hearing in one year.

B.     <u>Vindictiveness As A Due Process Violation</u>

Due process "requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial" and "that a defendant be freed of apprehension of such a retaliatory motivation on the part of the sentencing judge." <u>North Carolina v. Pearce</u>, 395 U.S. 711, 725 (1969).  The Court also set out a procedural requirement to "assure the absence" of a vindictive motivation: "whenever a judge

imposes a more severe sentence upon a defendant after a new trial, the reasons for him doing so must affirmatively appear" on the record.  Id.  Pearce  "'applied a presumption of vindictiveness, which may be overcome only by objective information . . . justifying the increased sentence.'" Texas v. McCullough, 475 U.S. 134, 142 (1986) (quoting United States v. Goodwin, 457 U.S. 368, 373 (1982)).  If the Pearce  presumption of vindictiveness does not apply, the petitioner bears the burden to show actual vindictiveness upon resentencing.  McCullough, 475 U.S. at 138.

C.      Analysis of Federal Habeas Claim

McLaughlin's habeas claim fails on the law as well as the facts.  The first problem is that there is no "clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1).  "Clearly established federal law, as determined by the Supreme Court of the United States" refers to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision."  Williams, 529 U.S. at 412. If there is no Supreme Court precedent that controls on the legal issue raised by a petitioner in state court, the state court's decision cannot be contrary to, or an unreasonable application of, clearly-established federal law.  Carey v. Musladin, 549 U.S. 70, 77 (2006); see also Ponce v. Felker, 606 F.3d 596, 604 (9th Cir. 2010) (quoting Wright v. Van Patten, 552 U.S. 120, 126 (2008)) ("If Supreme Court cases 'give no clear answer to the question presented,' the state court's decision cannot be an unreasonable application of clearly established federal law.")

Here, the Supreme Court cases that have been identified do not arise out of parole determinations and do not give a clear answer to the question presented.  In Pearce, 395 U.S. 711, the defendant's sentence was lengthened after his criminal conviction had been set aside and a new trial ordered.  Later Supreme Court cases developing the Pearce rule also arose in the context of sentencing decisions.  See, e.g., Alabama v. Smith, 490 U.S. 794 (1989) (Pearce presumption of vindictiveness does not apply when a sentence imposed after trial is greater than that previously imposed after a guilty plea); McCullough, 475 U.S. 134 (defendant's sentence

was doubled after a motion for new trial was granted and he again was convicted, where he was sentenced by the judge rather than the jury).   A related line of cases concerns alleged prosecutorial vindictiveness, but that too does not involve parole decisions.   See United States v. Goodwin, 457 U.S. 368, 373 (1982) (prosecutorial vindictiveness not presumed when charges were increased from a misdemeanor to a felony after defendant initial expressed an interest in a plea bargain but then requested a jury trial).   These cases illustrate that the presumption of vindictiveness rule was developed by the U.S. Supreme Court in the context of resentencing a defendant after he had challenged his criminal conviction or sentence or exercised a trial-related right.   None of the many Supreme Court cases mentioning Pearce  have extended the rule to the parole context.   The Ninth Circuit has applied the presumption of vindictiveness to parole decisions, but Ninth Circuit cases don't provide the law required by § 2254(d).   See, e.g., Nulph v. Cook, 333 F.3d 1052 (9th Cir 2003) (parole board's decision to more than double inmate's minimum prison term after he challenged earlier decision was presumptively vindictive); Bono v. Benov, 197 F.3d 409 (9th Cir. 1999) (U.S. Parole Commission acted with presumed vindictiveness in extending parole release date by 12 years after petitioner asserted a legal challenge).

McLaughlin tries to fit within the Supreme Court rule by contending that the BPH's decision was really a sentencing decision.   He argues that the 2006 BPH panel "reduced" his term from life to 244 months, and that the 2007 panel increased it back to life imprisonment. That is a misdescription of what occurred, from a legal standpoint.   Under California law, a prisoner first must be found suitable and then a term is calculated and a release date set.   See Cal. Penal Code § 3041.   The statutory scheme places individual suitability for parole above a prisoner's expectancy in early setting of a fixed date designed to ensure term uniformity.   See In re Dannenberg, 34 Cal. 4th 1061, 1070-71, 1078 (Cal. 2005).   Here, the 2007 BPH panel did not reset or increase McLaughlin's term – it never reached the term question because it did not find him suitable for parole.   He remains eligible for parole, and his sentence has not been reset to

1    a straight life imprisonment sentence as he suggests.[2]

2        Without any clearly established law as set forth by the U.S. Supreme Court, it follows that

3    the state court's rejection of McLaughlin's claim cannot be said to be contrary to, or an

4    unreasonable application of, such law  as is necessary for federal habeas relief under 28 U.S.C.

5    §2254(d).  The Pearce line of cases pertains to sentencing decisions by a trial court, which are

6    different from the predictive decision a parole board must make in determining whether a

7    prisoner is suitable for parole.  McLaughlin's sentence was set long ago by the Riverside County

8    Superior Court as life imprisonment with the possibility of parole after 15 years.  The decision

9    here was the discretionary one as to whether to release the prisoner before the end of that life

10   maximum sentence.  Pearce and its Supreme Court progeny do not control the legal issue raised

11   by McLaughlin's petition.

12       Even if McLaughlin could overcome the absence of clearly established law from the

13   Supreme Court – for example, if Pearce could be understood to establish a general principle

14   prohibiting a vindictive response to a challenge to the decision-maker's authority –  his claim

15   would falter on the facts.  The sequence of events simply does not suggest vindictiveness.   The

16   event that allegedly triggered the vindictive response occurred before both the favorable and

17   unfavorable decisions.   The triggering event (i.e., the success in the Rutherford class action)

18   occurred in February 2006, which was before the BPH first granted parole in April 2006, as well

19   as before the Governor's September 2006 reversal, and the BPH's denial of parole in September

20

21       [2]McLaughlin also urges that the 2007 BPH panel's request for a new psychological evaluation
     was vindictive punishment, but this is even further removed from the sentencing decisions that Pearce
22   found to be violative of a criminal defendant's due process rights.  In any event, the record provides
     evidence of the reason for the request.  McLaughlin had refused to participate in the last psychological
23   evaluation.  See 9/27/2007 RT 16.  Also, the psychological report's description of the murder was at
     odds with the probation officer's report, with the former downplaying the viciousness of it.  See id. at
24   31.  The 2006 psychologist's report described the commitment offense as "quite situational," and
     occurring "during a lovers' argument in which the female victim became very violent.  As a result of his
25   anger and rage at the victim's behavior, he tried to stop her from assaulting him by grabbing her throat
     which ended with her death."  4/4/06 psychological report, p. 3.  According to the BPH commissioner,
26   the probation officer's report, on the other hand, indicated the body had been dumped partially nude in
     the desert and that the victim had been alive while in the trunk of McLaughlin's car, and the trial court's
27   written decision stated that there were up to 70 separate wounds or abrasions on the body.
     See 9/27/2007 RT 13-14, 21-23, 30.
28

2007. McLaughlin would not have received that favorable decision after the <u>Rutherford</u> decision if BPH officials were of a vindictive mindset. McLaughlin tries to get around this sequencing problem by contending that the "<u>Rutherford</u> court retained jurisdiction and continues to issue remedial orders in the matter." Traverse, p. 2. However, his 2006 declaration shows the substantial orders that were issued in <u>Rutherford</u> before both the grant and the denials of parole for him, and he has not provided evidence of any significant event in <u>Rutherford</u> that happened later. Surely one cannot presume that the BPH, having granted relief after the <u>Rutherford</u> court's substantive decision, would find that same court's exercise of continuing jurisdiction to be an irritant worthy of retaliation.

Further, the <u>Rutherford</u> class action would be, at best, a very weak triggering event for McLaughlin. There is no evidence that McLaughlin played any role in the <u>Rutherford</u> class action, such that he personally might have drawn the ire of parole authorities. He was merely one of hundreds or thousands of prisoner within the petitioner-class. Also, the <u>Rutherford</u> class action did not concern the standards for granting and denying parole, but instead concerned the timing of hearings and other procedural concerns. There is no evidence that these concerns were of particular importance to McLaughlin or the BPH commissioners in McLaughlin's case. Indeed, there is no evidence that the BPH panel knew in 2007 that he had participated in the <u>Rutherford</u> class action. There is no reasonable likelihood that the later finding of unsuitability was due to the <u>Rutherford</u> case. <u>See</u> <u>Goodwin</u>, 457 U.S. at 373. <u>Cf.</u> <u>McCullough</u>, 475 U.S. at 138 ("[V]indictiveness of a sentencing judge is the evil the [<u>Pearce</u>] Court sought to prevent rather than simply enlarged sentences after a new trial.") McLaughlin is not entitled to the writ.

/   /   /

/   /   /

/   /   /

8

**CONCLUSION**

For the foregoing reasons, the petition for writ of habeas corpus is DENIED.

A certificate of appealability will not issue. <u>See</u> 28 U.S.C. § 2253(c).  This is not a case in which "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000).

The clerk shall close the file.

IT IS SO ORDERED.

DATED: September 29, 2010

_____
SUSAN ILLSTON
United States District Judge

9